UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Flower Factory, Inc., *et al.*, | ) | Case No. 11-60406 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Judge Russ Kendig |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION FOR INTERIM AND FINAL
ORDERS UNDER 11 U.S.C. §§ 105(a), 361, 362, 363 AND 364 AND FEDERAL
BANKRUPTCY RULES 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO
OBTAIN SECURED POST-PETITION FINANCING AND USE CASH COLLATERAL;
(II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING THE AUTOMATIC
STAY; (IV) SETTING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors of Flower Factory, Inc. and its affiliated debtors (the "Committee") hereby files its limited objection (the "Objection") to the current proposed terms of postpetition financing and use of cash collateral as provided in the *Motion for Interim and Final Orders Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 364 and Federal Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Secured Post-Petition Financing and Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting Final Hearing; and (V) Granting Related Relief* (Docket No. 16) (the "DIP Financing Motion") and *Interim Order Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 364 and Federal Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Debtors to Obtain Secured Post-Petition Financing and Use Cash Collateral; (II) Granting Adequate Protection; (III) Modifying the Automatic Stay; (IV) Setting Final Hearing; and*

*(V) Granting Related Relief* (Docket No. 56) (the "<u>Interim DIP Financing Order</u>").[1] In support of its Objection, the Committee states as follows:

**Background**

1. On February 15, 2011, the above captioned debtors (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The cases are being jointly administered for procedural purposes only.

2. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in this chapter 11 case. On February 28, 2011, the office of the United States trustee (the "<u>U.S. Trustee</u>") appointed the Committee. On March 4, 2011, the Committee retained, subject to this Court's approval, Calfee, Halter & Griswold LLP as its counsel.

4. The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the chapter 11 case. Consideration of cash collateral use constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Objection**

5. The Committee files this Objection to ensure that the Committee has the opportunity to fully investigate the Pre-Petition Obligations and Pre-Petition Liens of the Pre-Petition Lenders and to ensure that the unsecured creditors represented by the Committee do not unfairly bear the burden of the costs of these chapter 11 cases.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the DIP Financing Motion and the Interim DIP Financing Order.

### A. The Committee's Ability to Investigate Claims and Causes of Action Against the Lenders and Their Liens Must Be Protected.

6. As part of the Interim DIP Financing Order, the Debtors entered into stipulations regarding among other things, the validity and priority of the Pre-Petition Liens and Pre-Petition Obligations. Thus, the Debtors cannot investigate or challenge the Pre-Petition Liens and the Pre-Petition Obligations, such an investigation must be done by the Committee. Pursuant to paragraph 6 of the Interim DIP Financing Order, an arbitrary $10,000 cap is established for the aggregate amount of Cash Collateral that may be used to investigate any claim or cause of action against the Lenders (i.e., the Pre-Petition Lender and/or the DIP Lender).

7. The establishment of an artificial cap is inappropriate under the circumstances. The Committee must have the ability and discretion to fully investigate the Pre-Petition Liens and the Pre-Petition Obligations and any other claim or cause of action that exists against the Lenders, without the risk that its time investigating either must be abbreviated or uncompensated. To the extent any party in interest believes that the amount of time the Committee or its professionals spend investigating the Lenders and their liens is unreasonable, the Bankruptcy Code provides a mechanism for objecting to those fees. See 11 U.S.C. § 330 (contemplating the payment of reasonable compensation for estate professionals and giving the court authority to award compensation less than the amount requested).

8. A full and thorough investigation is imperative to ensure that the Lenders are not improperly benefitting from defective liens or faulty obligations. Accordingly, any modification to the fees charged by the Committee for this investigation should be made by the Court in its review of Committee counsel's fee applications and the reasonableness of the fees charged. The $10,000 limit must be removed.

### B. The Proceeds of Chapter 5 Actions Must Be Preserved for Unsecured Creditors.

9. Paragraph 9 of the Interim DIP Financing Order grants to the Lenders a first priority, priming lien pursuant to sections 364(c) and 364(d) on all the Collateral (i.e., both Pre-Petition Collateral and Post-Petition Collateral). The Interim DIP Financing Order also states that "Notwithstanding anything to the contrary in the DIP Loan Agreement, Lenders acknowledge the Collateral specifically excludes any causes of action under chapter 5 of the Bankruptcy Code and recoveries thereunder, including section 506(c), sections 544 through 550 and section 553 or other applicable law." (Interim DIP Financing Order, ¶P 9.) However, the same explicit recognition that the Lenders may not have a first claim in these chapter 5 avoidance actions is not found in (a) Paragraph 8 of the Interim DIP Financing Order, which grants the DIP Lenders a superpriority administrative expense claim under section 364(c)(1) of the Bankruptcy Code, or (b) Paragraph 10 of the Interim DIP Financing Order, which provides the Lenders a superpriority administrative claim under section 507(b) of the Bankruptcy Code. The recoveries from avoidance actions should ultimately be for the benefit of the estates and their unsecured creditors.

10. Courts recognize generally that avoidance actions and their proceeds are one of the few sources of recovery for unsecured creditors and granting liens on those actions and proceeds is disfavored. See, e.g., Official Comm. Of Unsecured Creditors v. Chinery (In re Cybergenics, Corp.), 226 F.3d 237, 244-45 (3d Cir. 2000). To encumber or allow a claim against the chapter 5 causes of actions and their proceeds would be inequitable and serves to remove one avenue for unsecured creditors to obtain a meaningful recovery from these estates. Providing the Lenders with a superpriority claim with respect to the chapter 5 action proceeds has the same effect as approving liens on avoidance actions and their proceeds. Accordingly, the final order approving postpetition financing should be clear that the Lenders' superpriority claim

(and administrative claim) does not attach to the chapter 5 avoidance actions and proceeds and the Lenders should expressly waive and exclude the recoveries from chapter 5 avoidance actions from the superpriority claims.

C. *The Debtors Must Have the Ability to Pursue Sales of Assets that are in the Best Interests of the Estates without Jeopardizing Postpetition Financing.*

11. Although any bankruptcy and postpetition financing will subject a debtor to agreements and compromises so that financing can be obtained, giving the Lenders the ability to terminate financing for the Debtors' exercise of business judgment on case directional issues is inappropriate. As it stands, these chapter 11 cases will be moving very quickly. The DIP Loan Agreement contemplates a Maturity Date of June 1, 2011. It is the Committee's understanding that the Debtors intend to file a plan of reorganization quickly, so that they can emerge by the Maturity Date. In addition, the Committee understands that the Debtors intend to reorganize their operations around four retail stores.

12. The Interim DIP Financing Order contemplates that the filing of any section 363 sale motion would be a Termination Event. See Interim DIP Financing Order, ¶ 18(z). Accordingly, a sale motion that proposes to sell assets unnecessary to the Debtors' ongoing operations or one that contemplates the full payment of the Obligations to the Lenders would still be a Termination Event, and potentially an Event of Default.[2] The final order on postpetition financing in these cases should not prevent the Debtors from being able to evaluate their reorganization strategies, including selling assets, and exercise their business judgment to pursue a value maximizing sale of assets under section 363 of the Bankruptcy Code without

---

[2] Although it is not explicitly an Event of Default under the DIP Loan Agreement, certain sections of the DIP Loan Agreement, which are not as broad as the Interim DIP Financing Order, have certain customary restrictions on the disposition of assets. For example, Section 6.18 of the DIP Loan Agreement contains a covenant to maintain assets by not selling assets or Collateral, and Section 7.1(e) of the DIP Loan Agreement makes it an Event of Default to, "sell or attempt to sell all or substantially all of its assets, without the Lender's prior written consent."

jeopardizing their postpetition financing.

### Reservation of Rights

13. The Committee has requested certain clarifications regarding the Carveout and the Budget from the Debtors and the Lenders and expressly reserves its rights to object with respect to those items. In addition, as the Committee was only recently formed and has yet to see a proposed final order, the Committee expressly reserves its rights to object to or challenge any other provisions of the postpetition financing, the Interim DIP Financing Order or any changes proposed by the Debtors to the terms of the financing.

WHEREFORE, the Committee respectfully objects to the Interim DIP Financing Order and requests that the Court require the modification of the terms of financing and use of Cash Collateral consistent with this Objection and grant such other relief it deems appropriate.

Dated: March 8, 2011

Respectfully submitted,

/s/ Jean Robertson
Jean R. Robertson (OH 0069252)
Gus Kallergis (OH 0071557)
Nathan A. Wheatley (OH 0072192)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816
Email: *jrobertson@calfee.com*
*gkallergis@calfee.com*
*nwheatley@calfee.com*

PROPOSED ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically transmitted on March 8, 2011 via the Court's CM/ECF system to the following parties who are listed on the Court's Electronic Mail Notices List:

- Kevin L Bradford    klbradford@nnblaw.com
- Kate M Bradley    kbradley@brouse.com, tpalcic@brouse.com;mmiller@brouse.com
- Edwin H Breyfogle    edwinbreyfogle@sssnet.com
- William P Coley    wpcoley@strausstroy.com, tlreddington@strausstroy.com
- Anthony J DeGirolamo    ajdlaw@sbcglobal.net
- Bridget Aileen Franklin    bfranklin@brouse.com
- Jeffrey Graham    jgraham@taftlaw.com, ecfclerk@taftlaw.com;krussell@taftlaw.com;docket@taftlaw.com
- Harry W Greenfield    bankpleadings@bucklaw.com, young@buckleyking.com;toole@buckleyking.com;heberlein@buckleyking.com
- Cynthia A Jeffrey    ecfndoh@reimerlaw.com, RACJ.ecfndoh@yahoo.com
- Matthew S. Johns    mjohns@taftlaw.com, dhighbaugh@taftlaw.com;ecfclerk@taftlaw.com
- Joseph C Lucci    jclucci@nnblaw.com
- Marc Merklin    mmerklin@brouse.com, tpalcic@brouse.com
- G. Christopher Meyer    christopher.meyer@ssd.com, ann.bell@ssd.com;cle_dckt@ssd.com
- Robert Bruce Preston    rpreston@bmsa.com
- Jean R. Robertson    jrobertson@calfee.com
- Tim Robinson    trobinson@dinslaw.com
- Sam O Simmerman    sosimmerman@kwgd.com, mhelmick@kwgd.com
- Gregory D Swope    gswope@kwgd.com, mhelmick@kwgd.com
- United States Trustee    (Registered address)@usdoj.gov
- Nathan A Wheatley    nwheatley@calfee.com
- Linda Maria Battisti ust21    Linda.Battisti@usdoj.gov

and via regular U.S. Mail upon the following parties:

Peek-A-Boo Toys Ltd
9040 Pennsauken Hwy
Pennsauken, NJ 08110

*/s/ Nathan A. Wheatley*
Nathan A. Wheatley

{01062672.DOC;1 }    7

11-60406-rk    Doc 99    FILED 03/08/11    ENTERED 03/08/11 16:33:22    Page 7 of 7