# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Flower Factory, Inc., Flower Factory Online, Inc., | ) | Case Nos. 11-60406, 11-60408, |
| ALEMIT Properties, LLC, Denbar, Inc., | ) | 11-60411, 11-60412, |
| FF North Canton, Inc., F.F. Aurora, Inc. (f/k/a | ) | 11-60414, 11-60415, |
| F.F. Florence, Inc.), F.F./Cleveland, Inc., | ) | 11-60417, 11-60419, |
| FF Greenwood, Inc., F.F. Mansfield, Inc., | ) | 11-60420, 11-60421, |
| Mulqueen Importers, LLC, d/b/a Creative | ) | 11-60423, 11-60424, |
| Resources, Mulqueen & Sons, LLC, | ) | 11-60425, 11-60426 |
| Mulden, Inc., Mulqueen Holdings, Inc.,  and | ) | |
| RAM Trucking, LLC, | ) | |
| | ) | |
| Debtors and Debtors-in-Possession. | ) | Judge Russ Kendig |

## SECOND AMENDED AND RESTATED PLAN OF REORGANIZATION OF DEBTORS AND DEBTORS-IN-POSSESSION

Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
BROUSE McDOWELL
388 S. Main Street, Suite 500
Akron, Ohio 44311
Telephone: (330) 535-5711
Facsimile: (330) 253-8601

Counsel for the Debtors and
Debtors-in-Possession

## INTRODUCTION

Flower Factory, Inc., an Ohio corporation, and the other jointly administered debtors and debtors in possession (collectively, as further defined below, the "Debtors"), hereby propose the following plan of reorganization (the "Plan," as further defined below) to resolve the outstanding claims against and equity interests in the Debtors. Parties entitled to vote on the Plan are strongly encouraged to read the Plan, as well as the Disclosure Statement (as defined below) previously filed with the Bankruptcy Court (as defined below), in full before submitting their ballots. The Disclosure Statement contains information regarding Debtors' history, operations, capital structure, earnings, and projections, as well as a summary and analysis of the Plan. Other agreements and documents supplement the Plan and have been or will be filed with the Bankruptcy Court. These supplemental agreements and documents are referenced in the Plan and the Disclosure Statement and will be available for review.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**A.     Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each such term is defined below), will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.     "Administrative Bar Date" means the last date on which a request for payment of an Administrative Claim may be filed, as set forth in the Plan.

2.     "Administrative Claim" means any right to payment constituting a cost or expense of administration in the Chapter 11 Cases under sections 364(c)(1), 503(b), 503(c), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred after the Petition Date (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) Professional Compensation Claims; (c) any Allowed Claims for reclamation under section 546(c)(1) of the Bankruptcy Code; (d) any Allowed Claims, pursuant to section 503(b)(9) of the Bankruptcy Code (e) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 19 11-1930; and (f) cure payments for any Executory Contract and Unexpired Leases that are assumed under Section 365 of the Bankruptcy Code.

3.     "Affiliate" means an "affiliate" as that term is defined in section 101(2) of the Bankruptcy Code.

4.     "Allowed" means with reference to any Claim: (a) any Claim (i) proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtors or the Creditor Trustee have not Filed

2

an objection on or before the expiration of the time period set forth for the objection to such Claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court fixing an objection date, or as to which and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder; (ii) listed on the Schedules, as amended, as other than disputed, contingent or unliquidated; (iii) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); (iv) expressly allowed under or pursuant to the terms of the Plan; or (v) on behalf of such Claim no consideration has or will be received, in whole or in part, by the Claim holder from any other source on account of such Claim, and (b) (i) the Secured Claim of Wells Fargo; (ii) the Secured Claims of American Equity; and (iii) the Secured Claim of SL Investment.

5.  "American Equity" means American Equity Investment Life Insurance Company.

6.  "American Equity Term Loan Documents" means the promissory notes, mortgages, security instruments, assignments of leases and rents, guaranties of non-Debtor parties and such other and further ancillary documents evidencing or relating to the Allowed Secured Claims of American Equity.

7.  "American Equity Term Loan Modification Documents" means the documents evidencing or relating to the modifications to each of the American Equity Term Loan Documents to effectuate the provisions of the Plan, the forms of which documents are attached hereto as Exhibit D.

8.  "Assets" means all of a Debtor's property, rights and interests that are property of a Debtor's Estate pursuant to section 541 of the Bankruptcy Code.

9.  "Ballot" means the form or forms distributed to each holder of an impaired Claim or Equity Interest entitled to vote on the Plan on which the holder indicates either acceptance or rejection of the Plan.

10.  "Bankruptcy Code" means title 11 of the United States Code, in effect as of the Petition Date.

11.  "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Ohio.

12.  "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court and, in each case, as in effect on the Petition Date

13.  "Bar Date" means the applicable bar date by which a proof of Claim must be, or must have been, filed, as established by a Final Order including the Order Establishing General and Government Claims Bar Dates and Approving Form of Notice Thereof a Bar Date Order and the Confirmation Order (Docket No. 143).

3

14.     "Bar Date Order" means any Final Order establishing Bar Dates for filing proofs of Claim in the Chapter 11 Cases, including the Order Granting Motion of Debtor Establishing General and Government Bar Dates and Approving Form and Notice Thereof, entered on March 25, 2011 (Docket No. 143), as the same may be amended, modified or supplemented.

15.     "Barbara Mulqueen Trust" means the Barbara G. Mulqueen Revocable Estate Plan Trust A and the Barbara G. Mulqueen Revocable Estate Plan Trust B.

16.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

17.     "Canton Property" means the real property owned by ALEMIT Properties, LLC located at Whipple Avenue, North Canton, Ohio, 44720.

18.     "Carrying Costs" mean, in connection with the sale of the Cleveland Property, all costs and expenses associated with such sale, including without limitation: (i) reasonable attorneys fees incurred by Debtors' counsel in connection with the sale and (ii) all taxes, insurance and utilities that accrue on or after April 5, 2011 through any closing on the sale.

19.     "Cash" means legal tender of the United States of America.

20.     "Causes of Action" means all claims, actions, causes of action, chooses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims of any of the Debtors, that are or may be pending on the Effective Date, or instituted after the Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Confirmation Date.  The term "Causes of Action" shall expressly exclude Recovery Actions and any and all Causes of Action or Recovery Action against Insiders.

21.     "Chapter 11 Cases" means cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and captioned as: Flower Factory, Inc., Case No. 11-60406, Flower Factory Online, Inc., Case No. 11-60408, ALEMIT Properties, LLC, Case No. 11-60411, Denbar, Inc., Case No. 11-60412, FF North Canton, Inc., Case No. 11-60414, F.F. Aurora, Inc., Case No. 11-60415, F.F./Cleveland, Inc., Case No. 11-60417, FF Greenwood, Inc., Case No. 11-60419, F.F. Mansfield, Inc., Case No. 11-60420, Mulqueen Importers, LLC, Case No. 11-60421, Mulqueen & Sons, LLC, Case No. 11-60423, Mulden, Inc., Case No. 11-60424, Mulqueen Holdings, Inc., Case No. 11-60425, and RAM Trucking, LLC, Case No. 11-60426.

22.     "Claim" means a claim as defined in section 101(5) of the Bankruptcy Code.  For the avoidance of doubt, a Claim does not include any right to payment of any nature arising out of or related to Equity Interests as defined in the Plan.

4

23. "Claims Objection Bar Date" means the bar date for objecting to proofs of Claim, which shall be 180 days after the Effective Date; *provided*, *however*, that the Reorganized Debtors or Creditor Trustee, as applicable, may seek additional extensions of this date from the Bankruptcy Court.

24. "Class" means each of the groups of holders of Claims or Equity Interests, as described in Article II of the Plan. For the avoidance of doubt, each of Class 2-A and Class 2-B is a separate "Class" for purposes of the Plan.

25. "Cleveland Property" means the real property owned by Mulqueen & Sons, LLC located at 10830 Brookpark Road, Brooklyn, Ohio, 44130.

26. "Columbus Property" means the real property owned by Mulqueen & Sons, LLC located at 4395 Clime Road, Columbus, Ohio, 43228.

27. "Confirmation" means the entry of a Final Order entered pursuant to Section 1129 of the Bankruptcy Code.

28. "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

29. "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

30. "Confirmation Order" means the Final Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

31. "Consolidated Estates" means, collectively, the Estates of each of the Debtors other than the Real Estate Debtors.

32. "Creditors' Committee" means the official committee of unsecured creditors in the Chapter 11 Cases appointed by the United States Trustee for the Northern District of Ohio, pursuant to section 1102 of the Bankruptcy Code, on February 28, 2011, as amended or reconstituted.

33. "Creditor Trust" means the liquidation trust established pursuant to the terms of the Plan in which all Creditor Trust Assets will vest as set for in the Plan on the Effective Date.

34. "Creditor Trust Agreement" means that certain Creditor Trust Agreement dated as of the Effective Date, the form of which is attached hereto as Exhibit A.

35. "Creditor Trust Assets" means all of the Assets transferred or granted to the Creditor Trust, consisting of: (a) the Creditor Trust Note, (b) Recovery Actions; and (c) all Recovery Action Proceeds.

36. "Creditor Trust Cash" means the total amount of $1,889,000 in Cash to be paid to the Creditor Trust in accordance with Section III.D.2.

37. "Creditor Trust Note" means that certain promissory note for payment of the Creditor Trust Cash dated as of the Effective Date, the form of which is attached hereto as Exhibit B.

38. "Creditor Trustee" means the Creditor Trustee appointed pursuant to Article III of the Plan.

39. "Dayton Property" means the real property owned by Mulqueen & Sons, LLC located at 480 Miamisburg Centerville Road, Dayton, Ohio, 45459.

40. "Debtor" and "Debtors" means, individually and collectively, Flower Factory, Inc., Flower Factory Online, Inc., ALEMIT Properties, LLC, Denbar, Inc., FF North Canton, Inc., F.F. Aurora, Inc., F.F./Cleveland, Inc., FF Greenwood, Inc., F.F. Mansfield, Inc., Mulqueen Importers, LLC, Mulqueen & Sons, LLC, Mulden, Inc., Mulqueen Holdings, Inc., and RAM Trucking, LLC.

41. "DIP Claims" means the Secured Claims of the DIP Lender against the Debtors, which claims were Allowed pursuant to the Final DIP Order.

42. "DIP Financing Agreement" means that certain *Debtor in Possession Credit and Security Agreement* entered into by and among Flower Factory, Inc. and the other borrowers identified therein, and Wells Fargo, as DIP Lender.

43. "DIP Lender" means Wells Fargo, in its capacity as the lender pursuant to the DIP Financing Agreement.

44. "DIP Loan" means Debtors indebtedness and obligations to the DIP Lender up to an aggregate principal amount not to exceed $3,900,000 pursuant to the terms and conditions of the Final DIP Order and the DIP Financing Agreement.

45. "Disclosure Statement" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to the Plan and has been prepared and distributed by the Debtors, as plan proponents, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented.

46. "Disputed" means a Claim or any portion thereof: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtors, or the Creditor Trustee has filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of Claim exceeds the amount or classification of any corresponding Claim listed in the Schedules; (d) for which no corresponding Claim has been listed in the Schedules; (e) on behalf of which Claim the holder has received consideration, in whole or in part, from

6

another source on account of such Claim; (f) that is not an Allowed Claim; or (g) that is otherwise disputed by the Debtors or the Creditor Trustee in accordance with applicable law, and in regards to which such dispute has not been withdrawn or determined by a Final Order.

47.     "Disputed Reserve" means the reserve established by the Creditor Trustee pursuant to the Creditor Trust Agreement and the Plan for, among other things, the payment or other satisfaction of Disputed Claims that become an Allowed Claim after the Effective Date.

48.     "Dissolved Debtors" mean F.F. Aurora, Inc., FF Greenwood, Inc. and F.F. Mansfield, Inc as each shall be dissolved after the Effective Date.

49.     "Distribution" means a distribution of Cash or other property made in accordance with the Plan or the Creditor Trust.

50.     "Distribution Date" means the date on which the Reorganized Debtors or the Creditor Trustee shall make a Distribution, which shall be a date selected by the Reorganized Debtors or the Creditor Trustee, respectively.

51.     "Effective Date" means a day, as determined by the Debtors that is not later than the first Business Day following the date on which all conditions to the Effective Date in Section VII.B have been met or waived in accordance with Section VII.C.

52.     "Entity" shall have the meaning ascribed in section 101(15) of the Bankruptcy Code.

53.     "Equity Interest" or "Equity Interests" means any equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to: (a) any common equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of common stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests at any time; and (b) any preferred equity interest in a Debtor that existed immediately prior to the Petition Date, including, but not limited to, all issued, unissued, authorized or outstanding shares of preferred stock, together with any warrants, options or legal, contractual or equitable rights to purchase or acquire such interests.

54.     "Estate" or "Estates" means the estate of each Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

55.     "Executory Contract or Unexpired Lease" means an unexpired contract or unexpired lease to which a Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

56.     "Exit Financing Agreement" means that certain Exit Financing Agreement, dated as of the Effective Date, the form of which is attached as <u>Exhibit C</u> hereto.

7

57.     "Exit Loan" means Reorganized Debtors' indebtedness and obligations to the Exit Lender pursuant to the terms and conditions of the Exit Financing Agreement.

58.     "Exit Lender" means Wells Fargo, in its capacity as lender pursuant to that certain Exit Financing Agreement.

59.     "Final DIP Order" means the Final Order entered by the Bankruptcy Court on March 18, 2011 (Docket No. 136), as amended, modified, supplemented or extended, authorizing, *inter alia*, the Debtors to enter into the DIP Financing Agreement.

60.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

61.     "General Unsecured Claim" means any Claim against any Debtor that is not an Administrative Claim, Secured Claim, Other Secured Claim, Other Priority Claim, or Priority Tax Claim.

62.     "Huntington" means the Huntington National Bank and Sky Bank, predecessor in merger to Huntington National Bank.

63.     "Impaired" shall have the meaning ascribed in section 1124 of the Bankruptcy Code.

64.     "Insider" shall have the meaning ascribed in section 101(31)(B) of the Bankruptcy Code and shall include any "equity interest holder" of a Debtor as the term is defined in section 101(16) of the Bankruptcy Code.

65.     "Liabilities" means all the liabilities of the Debtors' Estates, whether or not reflected in the financial records of the Debtors or their Schedules.

66.     "Notice Parties" means the Debtors or Reorganized Debtor, the Creditors' Committee or Creditor Trustee, Wells Fargo and each of the Term Lenders.

67.     "Other Priority Claim" shall have the meaning ascribed in section 507(a) of the Bankruptcy Code and expressly excludes Administrative Claims or Priority Tax Claims (as defined herein).

68.     "Person" shall have the meaning ascribed in section 101(41) of the Bankruptcy Code.

69.     ''Petition Date'' means February 15, 2011, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

70.     "Plan" means this second amended and restated plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or herewith, as the case may be.

71.     "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) (8) of the Bankruptcy Code.

72.     "Pro Rata" means, with reference to any Distribution on account of any Allowed Claim in Class 6, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in Class 6.

73.     "Professional" means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

74.     "Professional Compensation Claim" means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases.

75.     "Real Estate Debtors" means, collectively and individually, ALEMIT Properties, LLC and Mulqueen & Sons, LLC.

76.     "Record Date" means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the date the order approving the Disclosure Statement is a Final Order.

77.     "Recovery Actions" means, collectively and individually any and all causes of action under chapter 5 of the Bankruptcy Code and all other related and similar federal and state law causes of action.

78.     "Recovery Action Proceeds" means any consideration, including but not limited to Cash, received from Recovery Actions.

79.     "Released Parties" means, collectively and individually, the Debtors, the Reorganized Debtors and the Representatives of each of the foregoing.

80.     "Reorganized Debtors" mean Debtors, other than the Dissolved Debtors, as each shall exist after the Effective Date.

81.     "Representatives" means, with regard to any Debtor, its advisors, attorneys, accountants, Professionals, investment bankers, consultants and agents.

9

82.     "Restructuring Transactions" means, collectively, those mergers, consolidations, restructurings, dispositions, liquidations or dissolutions that the Debtors determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses or otherwise to simplify the overall corporate structure of the Reorganized Debtor, as described in greater detail in Section III.S.

83.     "Schedules" means the schedules of assets and liabilities filed by the Debtors pursuant to section 521 of the Bankruptcy Code, and as such schedules have been or may be amended from time to time.

84.     "Secured Claim" means: (a) Claims that are secured by a lien on property in which the Estates have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; and (b) Claims which are Allowed under the Plan as a Secured Claim.

85.     "SL Investment" means SL Investment Holdings 2008-1, LLC.

86.     "SL Investment Term Loan Documents" means the promissory notes, mortgages, security instruments, assignments of leases and rents, guaranties of non-Debtor parties and such other and further ancillary documents evidencing or relating to the Allowed Secured Claim of SL Investment.

87.     "SL Investment Term Loan Modification Documents" means the documents evidencing or relating to the modifications to each of the SL Investment Term Loan Documents to effectuate the provisions of the Plan, the forms of which documents are attached hereto as Exhibit E.

88.     "Term Lenders" means, collectively, American Equity and SL Investment.

89.     "Trust Beneficiary" or "Trust Beneficiaries" means holders of Allowed Claims in Class 6 that are entitled to receive Distributions from the Creditor Trust as set forth herein.

90.     "Trust Expenses" means expenses of the Creditor Trust.

91.     "Unclaimed Property" means any Distributions that are returned to the Reorganized Debtors or the Creditor Trustee as: (a) undeliverable to a Trust Beneficiary, or (b) unclaimed by an Allowed Creditor, as further described in section V.B.6.

92.     "Unimpaired" means, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests, not "Impaired."

93.     "Voting Deadline" means the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the

Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court.

94.  "Wells Fargo" means Wells Fargo Bank, National Association.

## B.  Rules of Interpretation and Computation of Time

### 1.  Rules of Interpretation

For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to the Plan, Confirmation Order or otherwise; (d) any reference to an entity as a holder or a Claim or Interest includes that entity's successors, assigns and affiliates; (e) all references in the Plan to Sections, Articles and exhibits are references to Sections, Articles and exhibits of or to the Plan; (1) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) subject to the provisions of any contract, articles or certificates of incorporation, bylaws, codes of regulation, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code will apply to the extent not inconsistent with any other provision of this Section I.B.1.

### 2.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Equity Interests, except DIP Claims, Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims and Priority Tax Claims, as described in Section II.A, have not been classified and thus are excluded from the following Classes.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

11

## A. Unclassified Claims

1.      On the Effective Date, or as soon as practicable thereafter, Wells Fargo will receive, in full satisfaction of the DIP Claims, Cash equal to the amount of the DIP Claims payable from the Exit Loan.

### 2.      Payment of Administrative Claims

#### a.      Administrative Claims in General

Except as specified in this Section II.A.2, and subject to the Bar Date provisions herein, unless a Final Order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim on (a) the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (c) at such time and upon such terms as may be agreed upon by such holder and the Reorganized Debtors; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided, however*, that Administrative Claims do not include Claims Filed after the Administrative Bar Date, unless otherwise provided by a separate Final Order of the Bankruptcy Court.

#### b.      Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid in Cash equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Reorganized Debtors in accordance therewith until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

#### c.      Ordinary Course Liabilities

Allowed Administrative Claims based on Liabilities incurred by a Debtor in the ordinary course of its business, including Administrative Claims arising from or with respect to the sale of goods or provision of services on or after the Petition Date in the ordinary course of the applicable Debtors business and Administrative Claims of governmental units for taxes (including tax audit Claims related to tax years or portions thereof ending after the Petition Date) will be paid by the Reorganized Debtors, pursuant to the terms and conditions of the particular transaction giving rise to those Administrative Claims, without further action by the holders of such Administrative Claims or further approval by the Bankruptcy Court.

### 3. Payment of Priority Tax Claims

#### a. Priority Tax Claims

Other than as set forth below, on the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, each holder of an Allowed Priority Tax Claim against a Debtor due and payable on or prior to the Effective Date will receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash: (a) a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) which total value shall include, if applicable, simple interest to accrue on any outstanding balance of such Allowed Priority Tax Claim starting on the Effective Date at the rate of interest determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code; and (c) over a period ending not later than 5 years after the Petition Date.

Nothing in this Section II.A.3.a shall prevent a Debtor or the Reorganized Debtors, at their option, from paying part or all of any Allowed Priority Tax Claim earlier than scheduled.

#### b. Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section II.A.3.a, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty will be disallowed. The holder of an Allowed Priority Tax Claim will not assess or attempt to collect such penalty from the Debtors, the Reorganized Debtors or their respective property.

#### c. Other Priority Claims

On or as soon as practicable after the Effective Date, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, one of the following treatments, in the sole discretion of the Debtors: (a) full payment in Cash of its Allowed Other Priority Claim; or (b) treatment of its Allowed Other Priority Claim in a manner that leaves such Claim Unimpaired.

### B. Classified Claims and Equity Interests

#### 1. The Secured Claims of Wells Fargo (Class 1 Claims – NON-VOTING).

(a) *Classification*: Class 1 consists of the Secured Claim of Wells Fargo.

(b) *Treatment*: Unless otherwise agreed by the Claim holder and the applicable Debtors or Reorganized Debtors, Wells Fargo, will receive the following in full satisfaction of all Class 1 Claims: Wells Fargo will provide the Exit Loan in the form of a line of credit, the term of which will be agreed upon among the Debtors and

13

Wells Fargo.  The Exit Loan will be in an amount sufficient to fully satisfy the DIP Loan.

(c) *Voting*:  Class 1 is classified for convenience only and not for voting purposes. Class 1 Claims will not vote on the Plan.

2.     **The Secured Claims of Term Lenders (Class 2 Claims)**.

(a) *Classification*:  Class 2 consists of the Secured Claims of American Equity and the Secured Claim of SL Investment, respectively.  Each holder of a Class 2 Secured Claim hereby is placed in a separate subclass (for a total of two subclasses), denominated as Class 2-A (American Equity) and Class 2-B (SL Investment) and each subclass is and shall be treated as a separate Class for all purposes, including for voting and distribution, under this Plan.

(b) *Compromise and Settlement*:  In consideration of each of the Term Lenders' waiver of Administrative Claims against the Estates under sections 507(b) and 365(d)(3) of the Bankruptcy Code and General Unsecured Claims against the Estates under sections 365(g) and/or 502(b)(6) of the Bankruptcy Code relating to, among other things, rejection (pursuant to Article IV of the Plan) of unexpired leases between a Real Estate Debtor, as landlord, and any other Debtor, as tenant, the Class 2 Secured Claims of American Equity and the Class 2 Secured Claim of SL Investment shall be treated as set forth herein.  Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of a settlement and compromise between the Debtors, Reorganized Debtors, the Estates and each of the Term Lenders pursuant to Bankruptcy Rule 9019.

(c) *Subclass 2-A*:  Allowed Secured Claims of American Equity.

(i)     American Equity holds Allowed Class 2-A Secured Claims against Debtor Mulqueen & Sons, LLC:

(A), with respect to the Dayton Property, in an aggregate Allowed amount equal to, as of the Effective Date, (i) the unpaid principal balance of approximately $3,523,529.00, plus (ii) all accrued but unpaid interest, late charges, legal fees and other charges as provided for in the American Equity Term Loan Documents, and

(B), with respect to the Columbus Property, in an aggregate Allowed amount equal to, as of the Effective Date, (i) the unpaid principal balance of approximately $2,994,999.57, plus (ii) all accrued but unpaid interest, late charges, legal fees and other charges as provided for in the American Equity Term Loan Documents.

(ii)     American Equity shall retain its liens, assignments of leases and rents, and security interests on all property and collateral described in the American Equity

14

Term Loan Documents, and such liens, assignments of leases and rents, and security interests are hereby deemed and determined to be valid, enforceable, duly perfected, first priority (subject only to the valid lien of real estate taxes and assessments) liens, assignments of leases and rents, and security interests in and to all such property and collateral to the extent as existed on the Petition Date, and are not capable of being subordinated, avoided, set aside, or recovered pursuant to the Bankruptcy Code or otherwise.

(iii)    The American Equity Term Loan Documents shall be reinstated as modified by the American Equity Term Loan Modification Documents to provide, *inter alia*, for interest-only monthly payments through July 31, 2012. Commencing August 1, 2012, monthly payments of interest (at the contract rate set forth in the American Equity Term Loan Documents) and principal shall thereafter be made to American Equity and amortized as set forth on Exhibit F attached hereto. The unpaid balance of the Allowed Class 2-A Secured Claims shall be due and payable, in full, not later than May 31, 2016. In addition to the payments described above, on the Effective Date American Equity shall be paid $33,454.53 in interest that accrued in respect of the American Equity Term Loan Documents for the month of February 2011, but that American Equity was not heretofore paid. Further, within thirty (30) days after the Effective Date, an amount sufficient to cure any shortfall in the real estate tax escrow in respect of the Dayton Property and Columbus Property shall be remitted to American Equity, in accordance with the American Equity Term Loan Documents.

(d) *Subclass 2-B*: Allowed Secured Claim of SL Investment.

(i)    SL Investment holds an Allowed Class 2-B Secured Claim against Debtor ALEMIT Properties, LLC in an aggregate Allowed amount equal to, as of the Effective Date, (i) the unpaid principal balance of approximately $9,077,804.08, plus (ii) all accrued but unpaid interest, late charges, legal fees and other charges as provided for in the SL Investment Term Loan Documents.

(ii)    SL Investment shall retain its liens, assignments of leases and rents, and security interests on all property and collateral described in the SL Investment Term Loan Documents, and such liens, assignments of leases and rents, and security interests are hereby deemed and determined to be valid, enforceable, duly perfected, first priority (subject only to the valid lien of real estate taxes and assessments) liens, assignments of leases and rents, and security interests in and to all such property and collateral to the extent as existed on the Petition Date, and are not capable of being subordinated, avoided, set aside, or recovered pursuant to the Bankruptcy Code or otherwise.

(iii)    The SL Investment Term Loan Documents shall be reinstated as modified by the SL Investment Term Loan Modification Documents to provide, *inter alia*, for interest-only monthly payments through July 31, 2012. Commencing August 1, 2012, monthly payments of interest (at the contract rate set forth in the SL Investment

Term Loan Documents) and principal shall thereafter be made to SL Investment and amortized as set forth on Exhibit G attached hereto. The unpaid balance of the Allowed Class 2-B Secured Claim shall be due and payable, in full, not later than May 31, 2016. In addition to the payments described above, on the Effective Date SL Investment shall be paid $44,329.94 in interest that accrued in respect of the SL Investment Term Loan Documents for the month of February 2011, but that SL Investment was not heretofore paid. Further, within thirty (30) days after the Effective Date, an amount sufficient to cure any shortfall in the real estate tax escrow in respect of the Canton Property shall be remitted to SL Investment, in accordance with the SL Investment Term Loan Documents.

(e) *No Reconsideration, etc.*: Notwithstanding any other term or provision of this Plan or the Confirmation Order, from and after the Effective Date each of the Allowed Class 2-A Secured Claims and the Allowed Class 2-B Secured Claim shall be and hereby are Allowed Secured Claims for all purposes in the Chapter 11 Cases and under this Plan and shall not be subject to disallowance, reconsideration (whether pursuant to Bankruptcy Code section 502(j) or otherwise), disgorgement, avoidance, recovery, recharacterization, subordination, reclassification, rights of set-off or recoupment, reduction or challenge in any manner whatsoever. **The Term Lenders, all of their respective officers, directors, employees, agents, representatives, successors and assigns, and any of them, are hereby finally and fully released and discharged in all respects from any and all Causes of Action or Recovery Actions.**

(f) *No stay of enforcement*: Notwithstanding any other term or provision of the Plan or the Confirmation Order, from and after the Effective Date the automatic stay of section 362(a) of the Bankruptcy Code, section 524 of the Bankruptcy Code, and the injunctive provisions set forth in Article VIII. D of this Plan shall not enjoin, bar, stay, impede, limit or otherwise affect the ability of (i) American Equity to invoke or enforce its rights and remedies under the American Equity Term Loan Documents (as modified by the American Equity Term Loan Modification Documents) or (ii) SL Investment to invoke or enforce its rights and remedies under the SL Investment Term Loan Documents (as modified by the SL Investment Term Loan Modification Documents).

(g) *Voting*: Class 2 Allowed Secured Claims are Impaired. Each holder of an Allowed Class 2 Secured Claim is entitled to vote on the Plan.

3. **The Secured Claim of Huntington National Bank (Class 3 Claim).**

(a) *Classification*: Class 3 consists of the Secured Claim against Debtor Mulqueen & Sons, LLC held by Huntington National Bank.

(b) *Treatment*: The parties intend to conduct a public auction sale of the Cleveland Property pursuant to section 363 of the Bankruptcy Code. The holder of an Allowed

16

Class 3 Claim will receive the net proceeds of the sale of the Cleveland Property, less all sale, advertising and Carrying Costs, in full satisfaction of its Class 3 Claim.

Subject to the foregoing, the holder of the Class 3 Claim shall be deemed to have a Claim in Class 6 to the extent that any portion of its Claim is unsecured pursuant to section 502(a)(1) of the Bankruptcy Code

(c) *Voting*:  The Class 3 Claim is Unimpaired, and holder of an Allowed Class 3 Claim is deemed to accept the Plan.

4.    **Other Secured Claims (Class 4 Claims).**

(a) *Classification*: Class 4 Claims consist of Secured Claims held by parties other than the Term Lenders, Huntington or Wells Fargo.

(b) *Treatment*:  On or as soon as practicable after the Effective Date, each holder of an Allowed Other Secured Claim against the Debtors will receive, in the sole discretion of the applicable Reorganized Debtor, except to the extent any holder of an Allowed Other Secured Claim agrees to a different treatment, either:

   (i) the collateral securing such Allowed Other Secured Claim;

   (ii) Cash in an amount equal to the value of the collateral securing such Allowed Other Secured Claim; or

   (iii) the treatment required under section 1124(2) of the Bankruptcy Code for such Claim to be reinstated or rendered Unimpaired.

(c) *Voting*: Class 4 is Unimpaired, and holders of Allowed Other Secured Claims are conclusively deemed to have accepted the Plan.

5.    **Other Priority Claims (Class 5 Claims)**.

(a) *Classification*: Class 5 consists of all Other Priority Claims against the Debtors that are not Priority Tax Claims.

(b) *Treatment*: Holders of Allowed Class 5 Claims shall receive, in full satisfaction, settlement, release, and discharge of such Allowed Priority Claim (a) on the Effective Date or as soon thereafter as is reasonably practicable, Cash equal to the amount of such Allowed Priority Claim, or (b) such other treatment as to which the Reorganized Debtor and such holder shall have agreed in writing.  All Disputed Class 5 Claims, if any, shall be reserved for in full on the Effective Date.

(c) *Voting*: Class 5 is Unimpaired, and holders of Class 5 Claims are deemed to have accepted on the Plan.

6. **General Unsecured Claims (Class 6 Claims).**

   (a) *Classification*: Class 6 consists of General Unsecured Creditors.

   (b) *Treatment*: Each holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction of such Claim its Pro Rata share, based upon the principal amount of each holder's Allowed Claim, of the Creditor Trust Assets.

   (c) *Voting*: Class 6 is Impaired, and holders of Class 6 Claims are entitled to vote on the Plan.

7. **Equity Interests (Class 7 Interests).**

   (a) *Classification*: Class 7 consists of all equity, membership interests and similar interests in the Debtors.

   (b) *Treatment*: On the Effective Date, (i) all Equity Interests in the Debtors will be cancelled and extinguished; and (ii) new equity or membership interests in the Reorganized Debtors will be created and issued as set forth on Exhibit H.

   The Holders of Class 7 Equity Interests shall not be entitled to Distributions of any kind on account of such interests.

   (c) *Voting*: Class 7 is Impaired and is deemed to have rejected the Plan.

## ARTICLE III.
## THE CREDITOR TRUST AND PLAN IMPLEMENTATION

A. **Vesting of the Creditor Trust Assets**

1.  On the Effective Date, automatically and without further action, all Assets of the Debtors, other than the Creditor Trust Assets (and any proceeds thereof) shall vest in the Reorganized Debtors. Furthermore, on the Effective Date, automatically and without further action, the Creditor Trust Agreement and Credit Trust Assets (and any proceeds thereof) shall vest in the Creditor Trust for the sole and express purpose of making Distributions to Trust Beneficiaries.

2.  The Debtors have not conducted an investigation of any Recovery Actions or Causes of Action of the Estates. However, according to the Debtors' business records, within the 90 days prior to the Petition Date, transfers were made by the Debtors to various parties (including Insiders) in the approximate total amount of $4,538,585.76. Attached hereto as Exhibit I1 is a list showing the parties, dates and amounts of the specific transfers based upon the

Debtors' current books and records. [1]Any Recovery Actions or Causes of Actions resulting from those transfers will be reserved and transferred to the Creditor Trust.

3. Additionally, any Recovery Actions (or any additional Causes of Action) resulting from transfers to any non-Debtor Insiders will be reserved and transferred to the Creditor Trust. The foregoing includes, but is not limited to, any Recovery Actions to recover transfers made to the non-Debtor Insiders within the period that is four years prior to the Petition Date. Attached hereto as Exhibit I2 is a list showing the identity of the non-Debtor Insiders and the amounts of the specific transfer received by the non-Debtor Insiders within the period that is four years prior to the Petition Date based upon the Debtors' current business records.[2] These transfers may be subject to avoidance and recovery under applicable law, including Chapter 5 of the Bankruptcy Code.

4. Notwithstanding anything contained herein, no release or waiver as to the Debtors or the Reorganized Debtors shall prevent a recovery from a third party, including, but not limited to non-Debtor Insiders, pursuant to 11 U.S.C. § 550.

**B.    Creation of Creditor Trust**

On the Effective Date, the Creditor Trust shall be established for the limited purpose of: (i) administering the Creditor Trust Assets, (ii) resolving all Disputed Class 6 Claims as of the Effective Date, and (iii) making all Distributions provided for under the Plan in respect of Class 6 Allowed Claims and all other Claims that may become Class 6 Allowed Claims subsequent to the Effective Date. The Creditor Trust Agreement is incorporated into the Plan by reference, and it is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The Creditor Trust shall be governed under the laws of the State of Ohio and the Bankruptcy Court will retain exclusive jurisdiction of the Creditor Trust.

**C.    The Creditor Trustee**

The Creditor Trustee shall be designated by the Creditors' Committee, subject to the approval of the Court. The Creditor Trustee shall be independent of the Debtors. The Creditors' Committee shall file a notice not less than ten (10) days prior to the Confirmation Hearing designating the person who has been selected as the Creditor Trustee, and shall include an affidavit from the proposed Creditor Trustee demonstrating that such individual is "disinterested" (within the meaning of section 101(14) of the Bankruptcy Code). For purposes of

---

[1] The actual amounts of these transfers may differ from the amounts identified in the Debtors' business records. It is the intent of the Debtors and the parties in interest to retain and reserve any Recovery Actions or Causes of Action that arise from these transfers, whether the actual amount of the transfers is the same or different from the amount identified in Exhibit I1, for the benefit of the Creditor Trust to the greatest extent available. Therefore, all parties that received transfers within the 90 day period referenced are hereby put on notice that those transfers are potentially subject to avoidance and recovery.

[2] The actual amounts of these transfers may differ from the amounts identified in the Debtors' business records. It is the intent of the Debtors and the parties in interest to retain and reserve any Recovery Actions or Causes of Action that arise from these transfers, whether the actual amount of the transfers is the same or different from the amount identified in Exhibit I2, for the benefit of the Creditor Trust to the greatest extent available. Therefore, all non-Debtor Insiders that received transfers within the four year day period referenced are hereby put on notice that those transfers are potentially subject to avoidance and recovery.

this paragraph, no person shall be deemed not "disinterested" merely as a consequence of serving as a Professional retained by the Creditors' Committee in the Chapter 11 Cases. If approved by the Bankruptcy Court, the person so designated shall become the Creditor Trustee on the Effective Date. The Creditor Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Creditor Trust Agreement. The Creditor Trustee may be removed by the Bankruptcy Court for cause shown or pursuant to the terms of the Creditor Trust Agreement.

**D.     Funding of the Creditor Trust**

1.     On the Effective Date, the Debtors shall transfer, convey and/or grant all right, title, interest and control in the Creditor Trust Assets to the Creditor Trust, and all Creditor Trust Assets shall automatically and irrevocably vest in the Creditor Trust without further action on the part of the Debtors, the Creditor Trustee, or the Bankruptcy Court, and with no reversionary interest in the Debtors.

2.     On the Effective Date, the Creditor Trust will be established by the Plan and funded with Creditor Trust Cash. The Creditor Trust Cash shall be paid to the Creditor Trust in the following manner. On the Effective Date, the Reorganized Debtors will make an initial Cash payment in the amount of $225,000 to the Creditor Trust. The balance of the Creditor Trust Cash, $1,664,000, shall be paid to the Creditor Trust by Flower Factory, Inc. and Mulqueen Holdings, Inc., jointly and severally, in quarterly payments (the "Trust Payments") amortized over five (5) years with no interest as set forth on Exhibit J and incorporated herein. Further, on the Effective Date, Flower Factory, Inc. and Mulqueen Holdings, Inc. will execute the Creditor Trust Note.

3.     The transfer of the Creditor Trust Assets to the Creditor Trust shall be made for the benefit and on behalf of all Trust Beneficiaries entitled to receive Distributions directly from the Creditor Trust and as incorporated herein. The Creditor Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Trust Beneficiaries entitled to receive Distributions from the Creditor Trust in exchange for their Allowed Class 6 Claims, and then by the Trust Beneficiaries entitled to receive Distributions from the Creditor Trust under the Plan to the Creditor Trust in exchange for a beneficial interest in the Creditor Trust. Such Trust Beneficiaries shall be treated as the grantors and owners of the Creditor Trust. Upon the transfer of the Creditor Trust Assets, the Creditor Trust shall succeed to all of the Debtors' rights, title, control and interest in the Creditor Trust Assets, and the Debtors will not have any further interest in or with respect to the Creditor Trust Assets.

4.     Upon the transfer of the Creditor Trust Assets to the Creditor Trust, the Debtors and their Estates shall have no other or further rights or obligations with respect to the Creditor Trust except as specifically set forth in the Plan; provided, however, that the Reorganized Debtors will make reasonable efforts to cooperate with the Creditor Trustee in achieving and effectuating the intent and purpose of the Creditor Trust, including but not limited to, providing documents and information relating to the Creditor Trust Assets.

20

## E. The Trust Advisory Board

1. An advisory board (the "Trust Advisory Board") shall be created for the Creditor Trust and shall be comprised of at least two (2) members, each of whom shall be designated by the Creditors' Committee. The Creditors' Committee shall file notice of the identities of such members with the Bankruptcy Court not less than ten (10) days prior to the Confirmation Hearing.

2. The Trust Advisory Board shall adopt such bylaws as it may deem appropriate. The Creditor Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Creditor Trust. In the event of the resignation or removal of the Creditor Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Creditor Trustee.

3. The members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Creditor Trust in accordance with the Creditor Trust Agreement. Such reimbursement shall be payable solely from the Creditor Trust Assets.

4. Upon the certification by the Creditor Trustee that the Creditor Trust Assets have been liquidated, distributed, abandoned, or otherwise disposed of, the members of the Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

## F. Responsibilities of Creditor Trustee

1. The Creditor Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Creditor Trust and will have those responsibilities created by this Plan and the Creditor Trust upon the terms and conditions summarized therein, and will, for the benefit of the Trust Beneficiaries, exercise the rights and powers vested in it by this Plan and the Creditor Trust in the same manner, and use the same degree of care and skill in their exercise as a prudent person would exercise and use under the circumstances in the conduct of its/his own affairs, and further agrees to receive and disburse all of the Creditor Trust Assets in accordance with the terms thereof and this Plan. More specifically, Creditor Trustee shall have the right, control, power, authority, standing and approval and shall be empowered to:

    (a) perform all of the obligations and agreements, including the Creditor Trust Agreement and the Creditor Trust Note provided for and incorporated herein;

    (b) keep and maintain in a trust account for the benefit of the Creditor Trust into which Creditor Trust Cash and Recovery Action Proceeds resulting from all or any part of the liquidation of Creditor Trust Assets;

    (c) keep and maintain trust accounts for the benefit of the Creditor Trust into which accounts the Trustee may place the Disputed Reserves;

21

(d) commence, continue, prosecute, litigate and/or settle and compromise Recovery Actions on behalf of the Creditor Trust and for the benefit of the Trust Beneficiaries thereof;

(e) to object to any Class 6 Claims (disputed or otherwise), and to compromise or settle any Claims prior to, during or after objection and/or to seek Bankruptcy Court approval for any settlements of Class 6 Claims;

(f) make Distributions in respect of Allowed Class 6 Claims and all other Claims that become Allowed Class 6 Claims subsequent to the Effective Date in accordance with the Plan;

(g) retain and/or terminate professional persons, in his sole discretion, to assist in the duties and responsibilities ascribed to him under this Plan and the Creditor Trust. Creditor Trust Expenses, including the reasonable fees and expenses of all professionals retained by the Creditor Trustee shall be paid first from the Creditor Trust Assets. Professionals of the Creditor Trustee may reserve in their client trust accounts amounts sufficient to pay such fees and expenses from the Creditor Trust Assets;

(h) satisfy all reporting requirements for the Creditor Trust, and all assets held by or on behalf of the Creditor Trust, to the relevant reporting authority;

(i) file with the Bankruptcy Court semi-annual reports regarding the liquidation or other administration of property comprising the Creditor Trust Assets, the Distributions made by it, and other matters required to be included in such report; and

(j) except as otherwise ordered by the Bankruptcy Court, and subject to the terms of the Plan, pay any fees and expenses incurred by the Creditor Trust on or after the Effective Date in accordance with the Creditor Trust Agreement.

2.      Subject to the other terms of the Plan and the Creditor Trust, the Creditor Trustee shall also have the right, control, power, authority, standing and approval to commence, continue, prosecute, litigate and/or settle and compromise Recovery Actions. The Creditor Trustee shall also have the right, standing and approval to object to the allowance of any Class 6 Claim.

3.      The Creditor Trustee may, in his sole discretion, and without order of the Bankruptcy Court, allow the Trust Advisory Board to commence, continue, prosecute, litigate and/or settle and compromise any Recovery Actions against third parties (including, but not limited to, Insiders and the Barbara Mulqueen Trust) on behalf of the Creditor Trust.

## G.     Claims Against Creditor Trust

All persons having any Claim against the Creditor Trust or its Professionals (which for purposes of this Article 3, the term "Professionals" shall also include the Trust Advisory Board and the Professionals employed by the Creditor Trustee) in connection with its performance of

22

its rights, powers and duties as such shall only look to the Creditor Trust and the Creditor Trust Assets for payment or satisfaction thereof.

## H.    Commingling of Assets and Creditor Trust Proceeds

The Creditor Trustee shall not commingle any of the Debtors' Assets or the Creditor Trust Assets with its own property or the property of any other person.

## I.    Reliance on Others

The Creditor Trustee may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the Creditor Trustee shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

## J.    Liability for Errors and Omissions

The Creditor Trust, Creditor Trustee, the Trust Advisory Board and all Professionals, and agents of same, shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it, unless it shall be proved that they or their agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of their rights, powers or duties according to this Plan and the Creditor Trust. In the event gross negligence and willful misconduct is proven, the Trust Beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorneys' fees. Neither the Creditor Trustee, nor the Trust Advisory Board, make any representations as to: (i) the value or condition of the Creditor Trust Assets or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Recovery Actions (iii) the amount at which Liabilities may be settled, (iv) the amount of any Distributions to be made in accordance with this Plan from the Creditor Trust Assets and (v) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Plan, and the Creditor Trustee, the Trust Advisory Board and all Professionals shall incur no liability or responsibility in respect of such matters.

## K.    Indemnification

The Creditor Trustee, Trust Advisory Board, their Professionals and agents shall be indemnified by and receive reimbursement from the Creditor Trust Assets (whether or not Distributed to the Trust Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Plan and Creditor Trust unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of the gross negligence or willful misconduct of the Creditor Trustee, Trust Advisory Board, or their Professionals and agents. All Claims of Creditor Trustee, Trust Advisory Board, their Professionals or agents for indemnification or reimbursement under this Article 3 shall be first offset against any portion of the Creditor Trust and the Assets of the Debtors including, but not limited to, the Creditor Trust Proceeds or, at

23

Creditor Trustee's discretion, against any payment or Distribution made or to be made in accordance with this Plan.

## L. Tax Treatment of the Creditor Trust

Creditor Trustee may pay taxes from the Creditor Trust Assets as appropriate. In addition, the Creditor Trust shall require consistent valuation of the property contributed to the Creditor Trust by the Creditor Trustee and the Beneficiaries for all federal income tax purposes. The Creditor Trust is intended to be treated for federal income tax purposes as a liquidating trust for the benefit of creditors or claimants within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with IRS Revenue Procedure 94-45, and, as a grantor trust under Section 677 of the Internal Revenue Code of 1986, as amended. Accordingly, the Creditor Trust Assets in respect of holders of Class 6 Claims shall be treated for all purposes of the Internal Revenue Code as (i) a transfer of such Distribution to such Class 6 creditors who are the Trust Beneficiaries of the Creditor Trust; and (ii) a transfer to the Creditor Trust by the Beneficiaries, who will be treated as the grantors and deemed owners of the Creditor Trust Assets. The Creditor Trustee shall be responsible for filing all federal, state, and local tax returns for the Creditor Trust as a grantor trust pursuant to applicable Treasury Regulations, including Treasury Regulation Section 1.671-4(a), and any income of the Creditor Trust will be treated as subject to tax on a current basis. Subject to the receipt of any definitive guidance of the IRS or the Bankruptcy Court, any claims reserve is intended to qualify and be treated as a disputed ownership fund pursuant to Proposed Treasury Regulation Section 1.468B-9. As such, any disputed claims reserve shall report and pay any taxes on its income, the Creditor Trustee shall act as the "administrator" of the disputed ownership fund, and the disputed claims reserve shall be subject to the continuing jurisdiction of the Bankruptcy Court. Currently, no money or other property shall be Distributed to any Person holding a Disputed Claim except to the extent that such Disputed Claim becomes an Allowed Claim pursuant to the Plan.

## M. Investment Authority

The Creditor Trustee shall have investment powers which are limited to those powers reasonably necessary to maintain the value of the Creditor Trust assets and to further the liquidating purpose of the trust as further described in IRS Revenue Procedure 94-45. The Creditor Trustee may only invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury Bills as specified in Revenue Procedure 94-45. Income earned on investments shall be deemed a part of the Creditor Trust Assets. Further, the Creditor Trustee shall be required to distribute at least annually to the Trust Beneficiaries (as such may have been determined at such time) its net income (net of Taxes paid, if any), except for amounts retained as reasonably necessary to maintain the value of the Creditor Trust Assets or to meet claims and contingent liabilities.

## N. Exemption From Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtors, Reorganized Debtors, or the Creditor Trust to any Entity pursuant to the Plan in the United States

shall not be taxed under any law imposing a stamp tax or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement Distributions under the Plan.

**O.     Termination**

Termination of the Creditor Trust shall occur no later than five (5) years after the Effective Date, unless the Bankruptcy Court shall approve an extension based upon a finding that such an extension is necessary for the Creditor Trust to complete its purpose.

**P.     Privileges**

The Debtors shall irrevocably transfer to the Creditor Trustee, all rights of the Debtors' Estates to exercise or waive any privilege, including the attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any document or communication (whether written or oral) relating to the Recovery Actions (collectively, the "Privileges"), and the Debtors' Estates and the Creditor Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges. All such Privileges also shall vest in the Creditor Trust and its representatives, to the full extent permitted under law. This transfer is self-executing as of the Effective Date. Additionally, the Creditor Trustee and the Debtors' Estates are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges. Notwithstanding the foregoing, the Debtors are not waiving or transferring, and nothing in this paragraph shall be deemed to waive or transfer to the Creditor Trust, any privilege not directly relating to the Recovery Actions.

**Q.     Cooperation**

The Debtors and the Reorganized Debtors shall provide the Creditor Trustee and the Creditor Trust with any information reasonably requested by the Creditor Trustee or the Creditor Trust; provided however, that the actual expenses incurred by the Debtors or the Reorganized Debtors in providing such information shall be reimbursed by the Creditor Trustee from the Creditor Trust. Moreover, neither the Debtors nor the Reorganized Debtors shall destroy or dispose of any documents or information relating to the debtors' pre-petition financial transactions, payments or accounts for a period of 2 years after the Effective Date.

**R.     Substantive Consolidation**

**1.     Consolidation for Plan Purposes Only**

Pursuant to the Confirmation Order, the Bankruptcy Court shall approve the substantive consolidation of the Debtors, subject to the provisions below. Pursuant to the Confirmation Order; (1) all Assets and Liabilities of the Debtors will be deemed merged; (2) all guaranties by one Debtor of the obligations of any other Debtor will be deemed eliminated so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint or several Liability of any of the Debtors will be deemed to be one obligation of the Debtors; (3) each and every Claim filed or to be filed in the Chapter 11 Case of any of the Debtors (other than the Chapter 11 Case of a Real Estate Debtor) will be deemed filed against the Consolidated

25

Estates and will be deemed one Claim against and a single obligation of the Consolidated Estates; and (4) all intercompany claims among the Debtors will be eliminated and extinguished. Notwithstanding the foregoing, (a) on the Effective Date, the Debtors, other than the Dissolved Debtors, shall emerge as distinct and separate Reorganized Debtors, and (b) such substantive consolidation (or any other term or provision of this Plan or the Confirmation Order) shall not, and shall not be deemed, determined or interpreted to, (a) make any Real Estate Debtor (including as a Reorganized Debtor) or its Assets liable for any Administrative Claim or other Claim now or hereafter owed by any other Debtor or Reorganized Debtor, (b) cause the Assets of a Real Estate Debtor (including as a Reorganized Debtor) to become encumbered by or subject to any lien, mortgage, assignment of rents, security interest, or other encumbrance, whether now existing or hereafter arising, against or granted by any other Debtor or Reorganized Debtor, or (c) alter, limit, or otherwise affect in any manner or to any degree whatsoever the Secured Claims, liens, assignments of leases and rents, and security interests of either of the Term Lenders against its respective Real Estate Debtor.

The Filing of this Plan serves as a motion seeking entry of an order consolidating the Estates of the Debtors to the extent, and subject to the provisions, set forth above. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan, filed with the Bankruptcy Court and served on the parties listed in Section X.E on or before five days before either the Voting Deadline or such other date as may be fixed by the Bankruptcy Court, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing. Any such consolidation order must be in form and substance reasonably acceptable to each of the Term Lenders.

### 2. Post-Effective Date Status

Except as otherwise provided herein (including with respect to the Restructuring Transactions described in Section III.S): (1) on the Effective Date, each Debtor, other than the Dissolved Debtors, will, re-emerge as separate legal entities; and (2) on the Effective Date, all property of the Estates of each Debtor, and any property acquired by a Debtor or a Reorganized Debtor under the Plan will vest in the applicable Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances, Equity Interests and other interests, other than the liens, claims and encumbrances specifically provided for in the Plan. On the Effective Date, the Debtors' Estates, other than Flower Factory, Inc., shall be closed without further order of this Bankruptcy Court. On and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

### 3. Dissolution of the Dissolved Debtors

On the Effective Date, the Dissolved Debtors shall be deemed dissolved.

**S.     Restructuring Transactions**

**1.     Restructuring Transactions Generally**

On or after the Confirmation Date, the applicable Debtors or Reorganized Debtors may enter into the following Restructuring Transactions, in accordance with applicable non-bankruptcy law: (1) the dissolution of the Dissolved Debtors; (2) the cancelation and extinguishment of the existing Equity Interests in ALEMIT Properties, LLC and the reissuance of all equity interests to Mulqueen Holdings, Inc; and (3) the cancelation and extinguishment of the existing equity interests in Mulqueen Holdings, Inc. and the reissuance of such equity interests in accordance with Exhibit H.

**2.     Exit Loan and Term Loan Modification Documents**

On the Effective Date, the Reorganized Debtors shall enter into the Exit Financing Agreement, shall execute and deliver to American Equity the American Equity Term Loan Modification Documents, and shall execute and deliver to SL Investment the SL Investment Term Loan Modification Documents.  Debtors anticipate that the Exit Financing Facility will be a $3,500,000 line of credit with advances at 85% of eligible accounts receivable and 56% of eligible inventory.

**3.     Obligations of the Reorganized Debtors**

The Restructuring Transactions will result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of the Debtors vesting in the Reorganized Debtors, save for those for which specific provisions to the contrary are made in the Plan or as the applicable parties shall agree.

**T.     Retirement and Other Related Agreements; Cessation of Retiree Benefits; Workers' Compensation Programs**

As of the Effective Date, the Reorganized Debtors will have authority to: (a) maintain, amend or revise existing employment, retirement, welfare, incentive, severance, indemnification and other agreements with its active directors, officers and employees, subject to the terms and conditions of any such agreement; and (b) enter into new employment, retirement, welfare, incentive, severance, indemnification and other agreements for active employees.

**U.     Corporate Action**

The Restructuring Transactions; the adoption of new or amended and restated certificates of incorporation and bylaws (or comparable constituent documents) for the Reorganized Debtors and the certificate of designations for the Reorganized Debtors; the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to any of the foregoing; the adoption, execution and implementation of employment, retirement and indemnification agreements, incentive compensation programs, retirement income plans, welfare benefit plans and other employee plans and related agreements, if any, and the other matters provided for under the Plan involving the corporate structure of the

27

Debtors and Reorganized Debtors or corporate action to be taken by or required of a Debtor or Reorganized Debtor will be deemed to occur and be effective as of the Effective Date, if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the officers or directors of the Debtors or the Reorganized Debtors.

## V.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, including the Exit Financing Agreement, the American Equity Term Loan Documents (including as modified by the American Equity Term Loan Modification Documents), and the SL Investment Term Loan Documents (including as modified by the SL Investment Term Loan Modification Documents), on the Effective Date (and except as specified in the treatment provided for Claims and Equity Interests in Article II), all mortgages, deeds of trust, liens or other security interests against the property of any Estate will be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the applicable Reorganized Debtor and its successors and assigns. As of the Effective Date, and subject to the provisions hereof, the Reorganized Debtors shall be authorized to execute and file on behalf of creditors Form UCC-3 Termination Statements or such other forms as may be necessary or appropriate to implement the provisions of this Section III.U.

## W.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

Christopher J. Mulqueen will be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.  Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax or similar tax: (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to the Plan.

## ARTICLE IV.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.    Assumption and Rejection of Executory Contracts and Unexpired Leases

Any Executory Contracts and Unexpired Leases that have not expired by their own terms on or prior to the Effective Date, which have not been assumed or rejected during the pendency of the Chapter 11 Cases and that are not the subject of a motion pending as of the Effective Date to assume, shall be deemed rejected on the Effective Date by the Debtors as of immediately prior

to the Petition Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. All unexpired leases between a Debtor, as tenant, and a Real Estate Debtor, as landlord, shall be rejected as of the Effective Date, and the applicable Reorganized Debtor shall enter into new, replacement leases with the applicable Reorganized Real Estate Debtor in form and substance reasonably acceptable to the applicable Term Lender and substantially conforming to the replacement leases in the supplement to the Plan to be filed with the Bankruptcy Court on or before the Confirmation Date.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim arising from the rejection of Executory Contracts or Unexpired Leases must be filed within thirty (30) days after the earlier of: (1) the date of entry of an order of the Bankruptcy Court approving any such rejection; and (2) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which proofs of claim are not timely filed within that time period will be forever barred from assertion against the Debtors and their Estates, the Reorganized Debtors and their respective successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article VIII.

**C.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan**

Any monetary amounts by which any Executory Contract and Unexpired Lease to be assumed pursuant to the Plan or otherwise shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on or as soon as practicable after the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding the amount of a cure payment, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other matter pertaining to assumption: (1) the Debtors or Reorganized Debtors, as the case may be, retain the right to reject the applicable Executory Contract or Unexpired Lease at any time prior to the resolution of the dispute; (2) cure payments shall only be made following the entry of a Final Order resolving the dispute.

**ARTICLE V.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.      Distributions for Allowed Claims as of the Effective Date**

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, the Creditor Trustee and the Reorganized Debtors, as the case may be, shall make Distributions on the Effective Date or as soon as reasonably practicable thereafter on account of all Allowed Claims that are entitled to receive Distributions under the Plan, and, from time to time, shall make further Distributions to holders of Claims that subsequently are determined to be Allowed Claims.

29

**B.      Method of Distributions to Holders of Claims and Interests**

**1.      Distributions to Secured Creditors**

The Reorganized Debtors will make all Distributions of Cash and other instruments or documents to holders of Claims in Classes 1 through 5 required by the Plan.

**2.      Distributions to Unsecured Creditors**

The Creditor Trustee will make all Distributions of Cash and other instruments or documents to holders of Allowed Claims in Class 6 required by the Plan.

**3.      Distributions to Holders of Allowed Interests**

No Distributions will be made to the holders of Class 7 Interests.

**4.      Distributions to Unclassified Creditors**

The Reorganized Debtors will make all Distributions of Cash and other instruments or documents to holders of Allowed Administrative Claims, DIP Claims and Allowed Priority Tax Claims required by the Plan.

**5.      Address of Record**

The address of the holder of a Claim shall be, for purposes of Distributions made pursuant to the Plan, the address set forth in any proof of Claim filed by such holder, or, in the absence of such a proof of Claim, the address set forth in the Debtors' books and records.

**6.      Undeliverable Distributions**

In the event that the Distribution to any holder of an Allowed Claim is returned as undeliverable, the Creditor Trustee or Reorganized Debtors will: (i)  hold such Distribution for a period of six months after the date upon which Distribution was first attempted, or such other period as may be ordered by the Bankruptcy Court on application by the Creditor Trustee or (ii) if the six-month period expires more than 90 days after the final Distribution has been made on Allowed Claims, the Creditor Trustee or the Reorganized Debtors, as the case may be and in their sole discretion, may stop payment on any distribution check remaining unpaid, and any such monies shall be donated to a nationally recognized charitable organization and disposed of under chapter 129 of Title 28. If the Creditor Trustee or Reorganized Debtors receive written notice within such six-month or 90-day period of such holder's then current address, then the undelivered Distribution, without interest, will be made to that address.  Any and all Distributions that remain undelivered after such six month or 90-day period, as the case may be, shall be made available for further Distribution or abandonment and any Claims represented thereby shall be discharged and forever barred.

### 7. Distributions Withheld for Disputed Claims

Other than as provided herein, the Reorganized Debtors or Creditor Trustee shall reserve Cash from Distributions to holders of Allowed Claims equal to the Distributions to which holders of Disputed Claims would be entitled if such Disputed Claims become Allowed Claims.

### 8. Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Reorganized Debtors or Creditor Trustee shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, Distributions received by holders in full or partial satisfaction of Allowed Claims will be allocated first to unpaid interest that accrued on such Claims, with any excess allocated to the principal amount of Allowed Claims.

### C. Minimum Distribution

Any other provision of the Plan notwithstanding, the Reorganized Debtors or Creditor Trustee will not be required to make Distributions of Cash less than $25 in value, and each such Claim to which this limitation applies shall be discharged and its holder forever barred from asserting that Claim against the Debtors' Estates or the Reorganized Debtors.

### D. Setoffs

The Debtors, Reorganized Debtors or Creditor Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant hereto on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), the Equity Interests, rights and Causes of Action of any nature that the Debtors, Reorganized Debtors or Creditor Trustee may hold against the holder of any such Allowed Claim; *provided that* neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Reorganized Debtors or Creditor Trustee of any such Equity Interests, rights and Causes of Action that the Debtors, Reorganized Debtors or Creditor Trustee may possess against any such holder, except as specifically provided herein.

### ARTICLE VI.
### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

### A. Resolution of Disputed Claims

### 1. Objections to Claims

All objections to Claims must be filed and served on the holders of such Claims, and any amendment to the Schedules to reduce the scheduled Claim of such holder, must be made by the Debtors or the Reorganized Debtors by the Claims Objection Bar Date. If an objection has not

31

been filed to a Claim or an amendment has not been made to the Schedules with respect to a scheduled Claim by the Claims Objection Bar Date, the particular Claim will be treated as an Allowed Claim if such Claim has not been allowed earlier.

## 2. Authority to Prosecute Objections

### a. Objections Filed Prior to the Effective Date

After the Confirmation Date, but prior to the Effective Date, the Debtors and the Creditors' Committee will have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims.

### b. Objections Filed On or After the Effective Date

On or after the Effective Date, the Creditor Trustee will have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment objections to Class 6 Claims and Debtors, Reorganized Debtors or the Creditor Trustee will each have authority to file, settle, compromise, withdraw or litigate to judgment objections to Administrative Claims, Priority Tax Claims or other Priority Claims.

### c. Settlement or Compromise of Disputed Claims On or After the Effective Date

From and after the Effective Date, the Creditor Trustee may settle or compromise any Disputed Claim or any objection or controversy relating to any Claim of $50,000 (in the aggregate) or less without approval of the Bankruptcy Court. Reorganized Debtors shall provide Wells Fargo with monthly reports detailing any settlements or compromises relating to Administrative Expenses, Priority Tax Claims or other Priority Claims.

## 3. Authority to Amend Schedules

The Debtors or Reorganized Debtors, as applicable, will have the authority to amend the Schedules with respect to any Claim and to make Distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor or Reorganized Debtors will provide (a) the holder of such Claim and the Creditor Trustee with notice of such amendment and such parties will have 21 days to file an objection to such amendment with the Bankruptcy Court. If no such objection is filed, the Creditor Trustee or Reorganized Debtors may proceed with Distributions based on such amended Schedules without approval of the Bankruptcy Court.

## B. Distributions on Account of Disputed Claims Once Allowed

Distributions on account of Disputed Claims that become Allowed Claims after the Effective Date shall be made in accordance with Article V of the Plan.

## C. Claims Estimation

The Reorganized Debtors or Creditor Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors or Creditor Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## D. Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. On the date or, if such date is not a Business Day, on the next successive Business Day that is twenty (20) calendar days after the end of the calendar quarter in which a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim will receive all payments and Distributions to which that holder is then entitled under the Plan. Notwithstanding the foregoing, any holder of both an Allowed Claim and a Disputed Claim in the same Class of Claims will not receive payment or distribution in satisfaction of any such Allowed Claim, except as otherwise decided by the Reorganized Debtors or the Creditor Trustee, as the case may be and in their sole discretion or ordered by the Bankruptcy Court, until all such Disputed Claims are resolved by settlement or Final Order. In the event that there are Claims that require adjudication or other resolution, the Reorganized Debtors and the Creditor Trustee reserve the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

## E. Claims Allowance

Except as expressly provided herein or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors and the Creditor Trustee will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date. All Claims of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed

33

disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as the case may be.

## ARTICLE VII.
## CONFIRMATION OF THE PLAN

**A.      Conditions Precedent to Confirmation**

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section VII.C:

1.      The Creditor Trustee shall be selected by the Committee;

2.      The Creditor Trust shall be established;

3.      The Exit Financing Agreement will be in form and substance acceptable to Wells Fargo in its sole discretion;

4.      The American Equity Term Loan Modification Documents and the SL Investment Term Loan Modification Documents will be in form and substance reasonably acceptable to American Equity and SL Investment, respectively, in their respective sole discretion;

5.      The Confirmation Order will be reasonably acceptable to the Debtors, the Creditors' Committee, Wells Fargo and each of the Term Lenders; and

6.      All exhibits to the Plan will be in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, Wells Fargo and the each of the Term Lenders.

**B.      Conditions Precedent to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated, unless and until the following conditions have been satisfied or duly waived pursuant to Section VII.C:

1.      The Bankruptcy Court shall have entered the Confirmation Order.

2.      The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to implement the Plan, including completion of the Restructuring Transactions and the other transactions contemplated by the Plan and the implementation and consummation of the contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

3.      No stay of the Confirmation Order shall then be in effect.

4.      The Plan and all exhibits to the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section X.A of the Plan.

34

## C. Waiver of Conditions to the Confirmation or Effective Date

The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time by the Debtors, (a) with the consent of Wells Fargo as to Articles VII.A.3, 5, and 6 and VII.B. 1, 2, 3 and 4, without an order of the Bankruptcy Court, and (b) with the consent of each of the Term Lenders as to Articles VII.A.4, 5, and 6 and VII.B.1 and 4, without an order of the Bankruptcy Court.

## D. Effect of Nonoccurrence of Conditions to the Effective Date

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section VII.C, then upon motion by the Debtors made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated pursuant to this Section VII.D: (I) the Plan will be null and void in all respects, including with respect to (a) the discharge of Claims and termination of Equity Interests pursuant to section 1141 of the Bankruptcy Code, (b) the assumptions, assignments or rejections of Executory Contracts and Unexpired Leases pursuant to Section IV.A and (c) the releases described in Article VIII; and (2) nothing contained in the Plan will (a) constitute a waiver or release of any Claims by or against, or any Equity Interest in, any Debtor or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

## ARTICLE VIII.
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

## A. Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtors, Estates, and holders of Claims.

## B. Discharge of Claims and Termination of Interests

### 1. Complete Satisfaction, Discharge and Release

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and termination of all Equity Interests arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order,

Confirmation will, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (C) the holder of a Claim based on such debt has accepted the Plan; and (ii) terminate all Equity Interests and other rights of holders of Equity Interests in the Debtors.

### 2. Discharge and Termination

In accordance with the foregoing, except as provided in the Plan, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtors and a termination of all Equity Interests and other rights of the holders of Equity Interests in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Equity Interest.

## C. Releases

### 1. Release of Debtors by Other Debtors

**As of the Effective Date, each of the Debtors, individually and in their capacity as a Reorganized Debtor, shall release each other from any and all Liabilities that they are entitled to assert against each other, in any way relating to obligations by and between the Debtors, their Chapter 11 Estates, the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of any Plan, or the property to be distributed under the Plan, the Disclosure Statement, any contract, employee pension or other benefit plan, instrument, release or other agreement or document related to any Debtor, the Chapter 11 Cases or the Estates created, modified, amended, terminated or entered into in connection with the Plan.**

### 2. General Releases by Holders of Claims or Interests

**Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each holder of a Claim will be deemed to forever release, waive and discharge all Liabilities in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plan, or the Disclosure Statement that such entity has, had or may have against any Released Party in any derivative capacity (which release will be in addition to the discharge of Claims and termination of Equity Interests provided herein and under the Confirmation Order and the Bankruptcy Code). For avoidance of doubt, this provision does not operate to release the individual non-derivative claims of individual creditors against Released Parties nor claims of any of the Term Lenders against non-debtor parties**

36

on account of guaranties or indemnity agreements in connection with the **American Equity Term Loan Documents** or the **SL Investment Term Loan Documents.**

> ### 3. Exculpation

From and after the Effective Date, the Released Parties, the Committee, Wells Fargo, each of the Term Lenders and the Creditor Trustee and its members and Representatives, acting in such capacity, shall neither have nor incur any liability to any Person for any act taken or omitted in connection with the Debtors' restructuring, including the formulation, preparation, dissemination, implementation, confirmation or approval of the Chapter 11 Cases, Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that this section shall not apply to the obligations arising under the Plan and *provided further, however*, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that act or omission is determined in a Final Order to have constituted fraud, bad faith, gross negligence or willful misconduct. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## D. Injunction

On the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order,

1. All Persons who have been, are or may be holders of Claims against or Equity Interests in a Debtor shall be enjoined from taking any of the following actions against or affecting a Debtor, its Estate or its Assets (including, but not limited to the Purchased Assets) with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):

    a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against a Debtor, its Estate, its Assets or any direct or indirect successor in interest to a Debtor, or any assets or property of such successor (including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

    b. enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against a Debtor, its Estate or its Assets or any direct or indirect successor in interest to a Debtor, or any assets or property of such successor;

    c. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien against a Debtor, its Estate or its Assets, or any direct or indirect successor in interest to a Debtor, or any assets or property of such successor other than as contemplated by the Plan;

37

d. except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Debtor, its Estate or its Assets, or any direct or indirect successor in interest to a Debtor, or any assets or property of such successor; and

e. proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan.

2. All Persons that have held, currently hold or may hold any Liabilities released or exculpated, will be permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

## ARTICLE IX.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

A. Except as provided in this Plan, allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims or Equity Interests;

B. Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

C. Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor or any Reorganized Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims or cure amounts arising therefrom;

D. Ensure that Distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

E. Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and either grant or deny any applications involving any Debtor or any Reorganized Debtor that may be pending on the Effective Date) or brought thereafter;

F. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any entity's rights arising from or obligations incurred in connection with the Plan and such documents;

H. Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

I. Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

J. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

K. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

L. Grant or deny any request by the Debtors for the sale or auction of the Cleveland Property and the retention of any broker or auctioneer in connection with such proposed sale;

M. Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

N. Enter a final decree or decrees closing the Chapter 11 Cases; and

O. Determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for taxes.

## ARTICLE X.
## MISCELLANEOUS PROVISIONS

### A. Modification of the Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right, in consultation with the Committee, Wells Fargo, and each of the Term Lenders, and in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order and upon order of the Bankruptcy Court, the Debtors may amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### B. Revocation of the Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation does not occur, then the Plan will be null and void in all respects, and nothing contained in the Plan will: (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any Debtor; (2) prejudice in any manner the rights of any Debtor or any other party in interest; or (3) constitute an admission of any sort by any Debtor or any other party in interest.

### C. Bar Date for Administrative Expense and Professional Compensation Claims

The deadline for submission by (i) Professionals of an application for Bankruptcy Court approval of accrued Professional Compensation incurred prior to the entry of the Confirmation Order and (ii) the holders of Administrative Expense Claims incurred prior to the Effective Date shall be sixty (60) days after the Effective Date.

### D. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

E.     **Service of Documents**

Any pleading, notice or other document required by the Plan or the Confirmation Order to be served on or delivered to (1) the Debtors and the Reorganized Debtor; or (2) the Committee; must be served on:

1.     **The Debtors and Reorganized Debtor**

Marc B. Merklin, Esq.
Kate M. Bradley, Esq.
Brouse McDowell
388 S. Main Street, Suite 500
Akron, Ohio 44311

2.     **The Committee**

Jean R. Robertson
Gus Kallergis
Nathan A. Wheatley
Calfee, Halter & Griswold LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, Ohio 44114

3.     **The Exit Lender**

Wells Fargo Capital Finance
100 Park Avenue, 2nd Floor
New York, New York 10017
Attn: Stephen R. Santini

With a copy to:

Jeffrey M. Rosenthal
Burke A. Dunphy
Greenberg Traurig, LLP
200 Park Avenue
Florham Park, New Jersey 07932

4.     **The Term Lenders**

American Equity Investment Life Insurance Company
P.O. Box 71216
Des Moines, Iowa 50325
Attn: Ben Garrett

With a copy to:

Jeffrey C. Toole
Buckley King LPA
1400 Fifth Third Center
600 Superior Avenue, E.
Cleveland, Ohio 44114

SL Investment Holdings 2008-1, LLC
One Sun Life Executive Park SC1307
Wellesley Hills, MA 02481
Attn: Matthew Sargent

With a copy to:

Tim J. Robinson
Dinsmore & Shohl, LLP
191 W. Nationwide Blvd.
Suite 300
Columbus, Ohio 43215

## F.    Further Documents

On or before the Effective Date, the Debtors, at their option, may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## G.    No Stay of Confirmation Order

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Fed.R.Bankr.P. 3020(e) and 7062.


Dated: July 7, 2011                          Respectfully submitted,


                                             Flower Factory, Inc., on its own behalf and on
                                             behalf of each affiliate Debtor

                                             By: /s/ Christopher J. Mulqueen
                                             Name: Christopher J. Mulqueen
                                             Title: Vice President


811536.3

42